### RANDALL *v.* LINGWALL.

[73 Pac. 1.]

VENDOR AND PURCHASER—POSSESSION OF TENANT AS NOTICE.

1. The possession of a tenant of real property is of itself sufficient to put an intending purchaser from a third person upon inquiry as to the landlord's title, and to charge him with constructive notice of such facts as might have been discovered by reasonable diligence.

EVIDENCE AS TO EXISTENCE OF TENANCY.

2. Decedent deeded land to his brother, who later reconveyed to decedent. The latter deed was not recorded, but decedent took possession, and later leased the land to a third person. The tenant paid the rent to decedent until the latter's death, after which the brother, having learned that his deed to decedent was not of record, notified the tenant that he owned the land, and demanded payment of rent, which the tenant accordingly paid to him for two months in order to avoid controversy, and without informing the decedent's representatives. *Held*, that the tenant still remained tenant of decedent, so that his possession was sufficient to put an intending purchaser of the property on inquiry as to decedent's rights.

EFFECT OF NOT INQUIRING OF STRANGER IN POSSESSION.

3. A purchaser of property, failing to make inquiry of a stranger in possession, is in law chargeable with bad faith, and cannot claim the rights of a *bona fide* purchaser: *Crossen* v. *Oliver*, 37 Or. 514, distinguished.

IDEM.

4. A purchaser from one apparently holding the legal title, who has not made any inquiry of the tenant in possession, is not in a position to urge that the inquiry, if made, would probably not have disclosed the rights of equitable claimants.

RULE WHERE GRANTOR RETAINS POSSESSION.

5. The rule that the continued possession of land by the grantor in a conveyance thereof is not notice to a *bona fide* purchaser from the grantee of any rights of such grantor, is not applicable where such grantor has not personally retained possession.

From Marion : Reuben P. Boise, Judge.

Suit by Bessie Randall and Bessie O. Randall, a minor, by Bessie Randall, her general guardian, against C. G. Lingwall. Decree for plaintiffs. Defendant appeals.

Affirmed.

For appellant there was an oral argument and a brief by *Mr. John H. Hall* to this effect:

I. A court of equity acts upon the conscience, and it is upon the ground of *mala fides* that a purchaser for value is affected with notice of a prior claim. The notice must be more than would excite the suspicion of a cautious and wary person ; it must be so clear and undoubted with respect to the existence of a prior right as to make it fraudulent in him afterwards to take and hold the property: *Raymond* v. *Flavel*, 27 Or. 219–246 (40 Pac. 158); *Bowman* v. *Metzger*, 27 Or. 23 (39 Pac. 3); *Crossen* v. *Oliver*, 37 Or. 514–521 (61 Pac. 885); *Lyons* v. *Leahy*, 15 Or. 8–11 (3 Am. St. Rep. 133, note, 13 Pac. 643); *Laubridg* v. *Bowland*, 52 Miss. 546–553 ; *Vest* v. *Michie*, 31 Gratt. 149 (31 Am. Rep. 722); *Garnier* v. *Wheeler*, 40 Or. 198 (66 Pac. 812); *Advance Thresher Co.* v. *Esteb*, 41 Or. 469 (69 Pac. 447); *Hall* v. *Livingston*, 3 Del. Ch. 348.

II. A purchaser from a vendee whose vendor remains in possession is not bound to inquire further as to the title when he finds on record a deed from such vendor, properly conveying the title to the person from whom he is about to purchase : *Exon* v. *Dancke*, 24 Or. 110–115 (32 Pac. 1045), and cases cited.

III. The possession of a tenant is not notice of his landlord's title : *McCleerey* v. *Wakefield*, 76 Iowa, 529 (2 L. R. A. 529, 41 N. W. 210); *Smith* v. *Dall*, 13 Cal. 510–511 ; 2 Sugden, Vendors, 558 ; Wade, Notice, § 273.

IV. General rumor of a fact is not sufficient to place a party on inquiry; there must be some act or declaration from an authenticated source: *Raymond* v. *Flavel*, 27 Or. 219–245 (40 Pac. 158); *Maul and Wife* v. *Rider*, 59 Pa. St. 167; *Kerns* v. *Swope*, 2 Watts (Pa.), 75; *Jackson* v. *Given*, 8 Johns. 137 (5 Am. Dec. 328); *Church* v. *Guernsey*, 39 Pa. St. 84–86; *Satterfield* v. *Malone*, 35 Fed. 445 (1 L. R. A. 35).

V. The payment of rent by the tenant to one holding the record title constitutes a valid attornment: *Leitch* v. *Boyington*, 84 Ill. 179; *Flagg* v. *Gillmacher*, 98 Ill. 293; *Hayes* v. *Lawver*, 83 Ill. 182.

For respondents there was a brief over the names of *Woodson T. Slater*, *William M. Kaiser*, and *Tilmon Ford*, with an oral argument by *Mr. Slater* and *Mr. Ford*.

MR. JUSTICE BEAN delivered the opinion.

This is a suit to quiet title. The plaintiffs are the widow and daughter of O. P. Randall, who died in February, 1898. In March, 1888, O. P. Randall purchased the property in controversy, conveying it·soon after by warranty deed to his brother, T. J. Randall, which deed was duly recorded. Some time in 1891, the latter reconveyed the property to O. P. Randall. This deed was not recorded, but the grantee took possession, and, in 1893, leased the property to G. G. Gans, who continued in possession until the commencement of this suit, and who paid the rent under his lease to O. P. Randall until the latter's death. T. J. Randall, ascertaining that his deed to his brother was not of record, then notified Gans that he owned the property, and demanded payment of the rent, which Gans accordingly paid him for the months of March and April, 1898, in order to avoid any controversy about his right to the possession, but without informing any of the representatives of O. P. Randall. On April 12, 1898, T. J. Randall sold and conveyed the property to the defendant, who, before making the purchase,

examined it, saw that Gans was in possession, but made
no inquiry of him or of any member of his family as to
the character of such possession, or his right thereto, but
relied entirely upon an abstract of the title. In December,
1898, the deed from T. J. to O. P. Randall was found, and
placed of record. Thereafter this suit was brought. Upon
this state of facts, it is apparent that the plaintiffs must
prevail unless the defendant is entitled to the rights of a
*bona fide* purchaser. This depends upon whether his knowl-
edge of Gans' possession was, under the circumstances,
sufficient to put him upon inquiry, and to charge him with
notice of the rights and equities of the plaintiffs.

The inquiry thus presented is twofold : *First*, is the pos-
session of a tenant notice of the title of his landlord, or
perhaps, more accurately speaking, is it sufficient to put
an intending purchaser upon inquiry, and to charge him
with notice of the landlord's title where he makes no in-
quiry ? *Second*, was Gans the tenant of O. P. or T. J. Ran-
dall at the time of the defendant's purchase ?

1. It seems to be well settled that the open, exclusive,
and notorious possession of property by a stranger to the
title is sufficient to put those who deal with it upon in-
quiry concerning the rights and equities of the party in
possession, and to charge them with knowledge thereof
when no inquiry is made: *Bohlman* v. *Coffin,* 4 Or. 313 ;
*Rayburn* v. *Davisson,* 22 Or. 242 (29 Pac. 738); *Petrain* v.
*Kiernan,* 23 Or. 455 (32 Pac. 158); *Ambrose* v. *Huntington,*
34 Or. 484 (56 Pac. 513). But whether such notice is con-
fined to the rights and equities of the party in possession,
or extends to those under whom he holds if he is a tenant,
is a disputed question. Mr. Sugden, in his work on Vend-
ors, says : "Notice of a tenancy will not, it seems, affect
a purchaser with constructive notice of a lessor's title.
Therefore, if a person equitably entitled to an estate let it
to a tenant who takes possession, and then the person

having the legal estate sells to a person who purchases
*bona fide* and without notice of the equitable claim, the
purchaser will hold against the equitable owner, although
he had notice of the tenant being in possession ": 2 Sug-
den, Vendors, 560.   The doctrine of Mr. Sugden was fol-
lowed by Mr. Justice STORY, in *Flagg* v. *Mann*, 2 Sumn.
486, 530 (Fed. Cas. No. 4,847), wherein he held that con-
structive notice from possession does not extend beyond
the title of the party in possession, although the learned
justice substantially admitted that the rule is supported
only by the ability of the author.   Upon the *dictum* of Mr.
Sugden, and the decision of *Flagg* v. *Mann,* the rule is
taken for granted in *Beatie* v. *Butler*, 21 Mo. 313 (64 Am.
Dec. 234), and *Smith* v. *Dall*, 13 Cal. 510.   The latter case,
however, was subsequently overruled in *Dutton* v. *Warsch-
auer*, 21 Cal. 609 (82 Am. Dec. 765), and the opposite doc-
trine is the law in Iowa, Illinois, New York, Nebraska,
North Carolina, Wisconsin, Pennsylvania, Minnesota, and
California: *Dickey* v. *Lyon*, 19 Iowa, 544; *Mallett* v. *Kaeh-
ler*, 141 Ill. 70 (30 N. E. 549); *Bank of Orleans* v. *Flagg*, 3
Barb. Ch. 316; *Conlee* v. *McDowell*, 15 Neb. 184 (18 N. W.
60); *Edwards* v. *Thompson*, 71 N. C. 177; *Wickes* v. *Lake*,
25 Wis. 71; *Wright* v. *Wood*, 23 Pa. 120; *Woods* v. *Far-
mere*, 7 Watts, 382 (32 Am. Dec. 772); *Morrison* v. *March*,
4 Minn. 422; *Thompson* v. *Pioche*, 44 Cal. 508; *Fair* v.
*Stevenot*, 29 Cal. 486.   The question was considered by Mr.
Justice COLE in *Dickey* v. *Lyon*, 19 Iowa, 544, and reference
is made to the opinion in that case for an able and ex-
haustive discussion of the subject, in the light of both
principle and authority.   The conclusion reached by him
was that "a person who purchases an estate in the posses-
sion of another than his vendor is in equity, that is, in
good faith, bound to inquire of such possessor what right
he has in the estate.   If he fails to make such inquiry,
which ordinary good faith requires of him, equity charges

him with notice of all the facts that such inquiry would
disclose. Suppose the possessor is a tenant holding under
a lease; an inquiry of such tenant would advise the pur-
chaser, not only of the length of time and terms of tenancy,
but also of the landlord, and hence that some other per-
son than his proposed vendor claimed a right to the estate,
and was holding possession thereof by his tenant. Being
thus advised, equity, in vindication of ordinary good faith,
requires him to ascertain the extent of right of such land-
lord in the estate." This doctrine is supported by the
overwhelming weight of authority, and it may, we think,
be regarded as practically settled, in this country, that the
possession of a tenant of real property is sufficient to put
an intending purchaser on inquiry. From that fact alone
he will be charged with notice of the landlord's title, unless
it be shown that he pursued the inquiry with reasonable
diligence, and failed to acquire knowledge of such title.
Indeed, as said by Mr. Chief Justice FIELD, in *Dutton* v.
*Warschauer*, 21 Cal. 609 (92 Am. Dec. 765): "It is not easy
to give to the fact of possession any influence as notice
without making it notice of all such matters as a prudent
man, desirous of purchasing the property, would naturally
inquire about respecting the title. Ascertaining that the
possession of the occupant is that of a tenant, he would,
in the ordinary course of things, proceed to inquire as to
the title of the landlord." The possession of Gans was
therefore sufficient to put the defendant upon inquiry, and
to charge him with notice of the title under which Gans
was holding at the time of his purchase.

2. This brings us to an examination of the second
branch of the question. If the relation of landlord and
tenant between O. P. Randall and Gans had ceased, and
such a relationship had been established between T. J.
Randall and Gans prior to the time of defendant's pur-
chase, the latter's possession would have been notice only

of the title under which he was then holding, and not of
the rights of his previous landlord. It is therefore im-
portant to ascertain whether he had ceased to be the ten-
ant of O. P. Randall. From the facts it appears that Gans
did not surrender possession to T. J. Randall, or make a
new lease with him, nor did he notify the successors in
interest of O. P. Randall of the demand made upon him
for rent, or of an intention to attorn to T. J. Randall. All
he did was to pay the latter rent for March and April.
The mere payment of rent, however, is not of itself suffi-
cient to establish the relation of landlord and tenant. It is
but evidence of such a relationship, and often satisfactory
as such. But where one in possession of property under
a lease from one person agrees to and does pay the rent
to another, such payment, if made under a misconception
of the facts, does not create the relation of landlord and
tenant between him and the payee. In order for mere
payment of rent to constitute a tenancy, it must be paid in
the capacity of a tenant. If paid in any other capacity, it
does not have that effect : Wood, Landl. & Ten. § 4 ; 1 Tay-
lor, Landl. & Ten. (8 ed.) § 23 ; *Strahan* v. *Smith,* 4 Bing. 90;
*Gregory* v. *Doidge,* 3 Bing. 473; *Doe d. Higginbotham* v.
*Barten,* 11 Adolph. & Ell. 307. It is therefore doubtful,
under the facts, whether the payment of rent by Gans to
T. J. Randall operated as an attornment, or estopped him
from denying Randall's title. But if it be assumed that
such was the effect of the arrangement between them, it
still did not destroy the relation of landlord and tenant
between Gans and O. P. Randall. A tenant must respect
his landlord's title. He cannot attorn to a person who is not
in privity with such title, and if he attempts to do so it has
no validity as against the landlord or his representative
or grantee : Wood, Landl. & Ten. § 541, p. 929 ; 1 Taylor,
Landl. & Ten. (8 ed.) § 180. Indeed, Mr. Justice CAMPBELL
thinks that an agreement by a lessee to pay rent to a third

person who has no title is invalid for want of a consideration. He says, in *Fuller* v. *Sweet*, 30 Mich. 237 (18 Am. Rep. 122): "Where a person in possession agrees by parol to pay money to a person out of possession, and who has no title, it is impossible to find any sensible ground for sustaining such a promise which would not sustain any other promise made without consideration. Where there is an indenture, there is, at common law, a presumed consideration. Where there is possession given, there is an actual consideration, which may render it also reasonable enough, under ordinary circumstances, to require the landlord to be put back in *statu quo*. But a person who never had or gave up possession to the tenant is left in *statu quo* by the tenant's remaining in possession, and in reason should have no further claim. If he has, it must be by some peculiar and anomalous rule, for which we have found no support." If, however, it be conceded that one in possession of land under a lease may attorn to a third person, it would seem that the only effect would be to estop him from denying the title either of his landlord or such third person : *Hamilton* v. *Pittock*, 158 Pa. 457 (27 Atl. 1079); *Carter* v. *Marshall*, 72 Ill. 609; *Lyon* v. *Washburn*, 3 Colo. 201. Whatever, therefore, the legal relationship of Gans and T. J. Randall may have been at the time of the defendant's purchase, Gans was, notwithstanding, the tenant of O. P. Randall, to the extent that the defendant was chargeable by his possession with knowledge of the plaintiff's equities in the property, as an inquiry of Gans would have naturally disclosed the true state of affairs.

3. It is argued that in cases of this character the court acts upon conscience, and that it is only upon the ground of *mala fides* that a purchaser for value is affected with the notice of a prior claim. Such is undoubtedly the rule where it is sought to charge him with notice on account of rumors or reports concerning the title : *Raymond* v. *Flavel*, 27 Or.

219 (40 Pac. 158); *Bowman* v. *Metzger*, 27 Or. 23 (39 Pac. 3, 44 Pac. 1090); *Crossen* v. *Oliver*, 37 Or. 514 (61 Pac. 885). But where the property at the time of the purchase is in possession of a stranger, the physical facts are such as to put the purchaser upon inquiry, and, if he fail to make such inquiry, he is in law chargeable with bad faith, and cannot claim the rights of a *bona fide* purchaser.

4. Again, it is said that if the defendant had acted upon the notice imputed by Gans' possession, and made inquiry of him concerning the title, he would not have been able to ascertain the true state of facts, as Gans did not know of the unrecorded deed. An inquiry, if made, would have disclosed the fact that Gans was and had been for many years holding possession of the property as the tenant of O. P. Randall, and that would have been notice of some claim or right in his landlord, the nature and character of which the defendant was in duty bound to endeavor to ascertain. However, he made no inquiry, and he is therefore chargeable with knowledge of the actual condition of the title. If he had exercised due diligence in attempting to ascertain the outstanding title, and had been unable to do so, a different question would have been presented ; but as he made no attempt of the kind, he is not in a position to urge that such inquiry would probably have been unavailing.

5. And, finally, it is argued that the possession of Gans was not notice to the defendant of the title of O. P. Randall, because of the rule announced in *Exon* v. *Dancke*, 24 Or. 110 (32 Pac. 1045), that the continued possession of land by the grantor is not notice to a *bona fide* purchaser from the grantee of any claim to the property by the grantor. There is authority for holding that this rule does not apply where a grantor remains in continuous possession long after the recording of the deed: *Bennett* v. *Robinson*, 27 Mich. 26 ; *Stevens* v. *Hulin*, 53 Mich. 93 (18 N. W. 569).

But whatever the rule may be upon that point, the doctrine can have no application here, because the grantor himself did not remain in possession of the property. Gaus' possession was sufficient to put the defendant upon inquiry as to the rights under which he was holding, and as such inquiry, if prosecuted, would presumably have disclosed his landlord's title, the defendant is chargeable with notice thereof.

We are of the opinion, therefore, that the plaintiffs are entitled to the relief demanded, and the decree of the court below must be affirmed.          AFFIRMED.